UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SABRINA MOORE,                    )    NO. CV 08-5473-CT
                                  )
          Plaintiff,              )    OPINION AND ORDER
                                  )
     v.                           )
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of                   )
Social Security,                  )
                                  )
                                  )
          Defendant.              )
_____  )

     For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

                    SUMMARY OF PROCEEDINGS

     On August 28, 2008, plaintiff, Sabrina Moore ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). On January 12, 2009, plaintiff filed a brief with points and authorities in support of remand or reversal. On February 17, 2009, the Commissioner filed an opposition.

## SUMMARY OF ADMINISTRATIVE RECORD

1. **Proceedings**

On September 6, 2005, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability since November 1, 2001, due to disk degeneration, carpal tunnel, arthritis, and high blood pressure. (TR 127-39.)[1] The application was denied initially and upon reconsideration. (TR 60-65, 67-72.)

On July 26, 2006, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 73.) On August 31, 2007, plaintiff, represented by an attorney, appeared and testified before an ALJ. (TR 474-85.) On January 18, 2008, the ALJ issued a decision that plaintiff was not disabled as defined by the Act because she could perform her past relevant work as a hotel clerk, and she thus was not eligible for benefits. (TR 21-28.) On February 6, 2008, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 16.) On June 23, 2008, the request was denied. (TR 6-8.) Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

Plaintiff subsequently sought judicial review in this court.

2. **Summary Of The Evidence**

The ALJ's decision is attached as an exhibit to this opinion and order and, except as otherwise noted, materially summarizes the evidence in the case.

---

[1]"TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

PLAINTIFF'S CONTENTIONS

Plaintiff essentially contends that she is entitled to benefits or a remand because the ALJ failed to properly consider:

1.   The treating physician's opinion regarding her impairments and inability to work;

2.   The consultative examining physician's opinion regarding plaintiff's walking and other physical limitations;

3.   Plaintiff's residual functional capacity;

4.   The actual mental and physical demands of plaintiff's past relevant work;

5.   Lay witness testimony; and,

6.   The side effects of plaintiff's prescribed medications.

STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards.   Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner.   Flaten v. Sec'y of Health and Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).   The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g).

3

1 | DISCUSSION

2 | 1.   <u>The Sequential Evaluation</u>

3 | A person is "disabled" for the purpose of receiving social security

4 | benefits if he or she is unable to "engage in any substantial gainful

5 | activity by reason of any medically determinable physical or mental

6 | impairment which can be expected to result in death or which has lasted

7 | or can be expected to last for a continuous period of not less than 12

8 | months."   42 U.S.C. §423(d)(1)(A).

9 | The Commissioner has established a five-step sequential evaluation

10 | for determining whether a person is disabled.   First, it is determined

11 | whether the person is engaged in "substantial gainful activity."   If so,

12 | benefits are denied.

13 | Second, if the person is not so engaged, it is determined whether

14 | the person has a medically severe impairment or combination of

15 | impairments.   If the person does not have a severe impairment or

16 | combination of impairments, benefits are denied.

17 | Third, if the person has a severe impairment, it is determined

18 | whether the impairment meets or equals one of a number of "listed

19 | impairments." If the impairment meets or equals a "listed impairment,"

20 | the person is conclusively presumed to be disabled.

21 | Fourth, if the impairment does not meet or equal a "listed

22 | impairment," it is determined whether the impairment prevents the person

23 | from performing past relevant work.   If the person can perform past

24 | relevant work, benefits are denied.

25 | Fifth, if the person cannot perform past relevant work, the burden

26 | shifts to the Commissioner to show that the person is able to perform

27 | other kinds of work.   The person is entitled to benefits only if the

28 |

4

1  person is unable to perform other work.   20 C.F.R. §416.920; <u>Bowen v.</u>

2  <u>Yuckert</u>, 482 U.S. 137, 140-42 (1987).

3      2.   <u>Issues</u>

4         A.   <u>Physicians' Opinions</u> (Issues #1 and #2)

5      Plaintiff asserts that the ALJ failed to give proper weight to the

6  opinions of Linda England, M.D., who treated plaintiff since February

7  2004, and Sean To, M.D., a consultative medical examiner.

8      i.   <b><u>Dr. England's Letter</u></b> (Issue #1)

9      In a June 2005 letter written to help plaintiff obtain Social

10  Security benefits, treating physician Dr. England stated: "I have been

11  seeing [plaintiff] since February of 2004 and to my knowledge, she has

12  never been able to work since that time.   She has multiple conditions

13  and circumstances in her life which make current employment impossible."

14  (TR 371.)   Plaintiff contends the ALJ "ignored" this letter and failed

15  "to discuss, or even mention, Dr. England's statement anywhere in his

16  decision."

17      In his decision, however, the ALJ did not ignore but addressed and

18  discounted Dr. England's letter. (TR 26.)

19      Although a treating physician's opinion generally is entitled to

20  great weight, "[t]he ALJ may disregard the treating physician's opinion

21  whether or not that opinion is contradicted." <u>Andrews v. Shalala</u>, 53

22  F.3d 1035, 1041 (9th Cir. 1995) (citation omitted).   To reject the

23  uncontroverted opinion of plaintiff's physician, the ALJ must present

24  clear and convincing reasons.   <u>Id.</u>  To reject the contradicted opinion

25  of a treating physician, the ALJ must provide "specific and legitimate

26  reasons" that are supported by substantial evidence. <u>Lester v. Chater</u>,

27  81 F.3d 821, 830-31 (9th Cir. 1995).

28

1    The Commissioner may properly reject a treating physician's opinion

2    that is conclusory and unsupported by objective medical findings, Batson

3    v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004), that

4    conflicts with the physician's own treatment notes, Connett v. Barnhart,

5    340 F.3d 871, 875 (9th Cir. 2003), that conflicts with the indepdent

6    opinion of a consulting examiner, Miller v. Heckler, 770 F.2d 845, 849

7    (9th Cir. 1985), or that conflicts with a non-examining physician's

8    opinion that is itself supported by other record evidence, Andrews v.

9    Shalala, 53 F.3d at 1041.

10   The ALJ discounted Dr. England's conclusion of total disability

11   based on the specific and legitimate reasons that the determination of

12   disability is a legal question reserved for the ALJ, and that the

13   opinion it is contradicted by her own treatment records, other examining

14   physicians, and by the medical and treatment record as a whole.[2]   (TR

15   27.)

16   First, although Dr. England opined total disability, the ALJ

17   pointed out that her notes show she "responded with limited and

18   conservative treatment" such as short-term physical therapy.   (TR 27,

19   360-84).   This is, the ALJ noted, "inconsistent with the medial response

20   that would be expected if the limitations were as severe as described .

21   . . ."   (TR 27.)   Furthermore, the ALJ found Dr. England's opinion

22   lacked the support of "clinical, laboratory, or other medical techniques

23   in the record."   (TR 27.)   Although Dr. England's opined total

24   _____

25   [2] Furthermore, plaintiff's prior treating physician, James
P. Gay, M.D., contradicts the conclusion of Dr. England.   Dr.
26   Gay's treatment notes reflect that when he "again" stated to
plaintiff his conclusion that she was not disabled she "became
27   irate, verbally abusive, and left." (TR 192.)

28                                      6

disability, she provided no objective findings in support of that conclusion.  (TR 27, 372).  The findings in the medical record are in marked contrast, the ALJ noted.  Plaintiff's MRI was unremarkable (TR 26, 217, 330), she was found to have only slight inflammation in her lumbar-sacral region (TR 26, 330), and her hypertension and asthma were found to be under control (TR 26, 330).

The ALJ also pointed out that the independent findings of a consulting medical examiner and the conclusions of two reviewing physicians all contradicted Dr. England's opinion. Specifically, Dr. To noted that, based on his independent examination, plaintiff is able to perform what amounts to a full range of light work activities, or slightly less than a full range of medium work activities.[3]  (See TR 26, 331.)  A state agency reviewing physician (see TR 26-27, 388-99), and reviewing physician Harvey Alpern, M.D., similarly concluded that the record suggests plaintiff is able to perform what amounts to a full

_____

[3] Specifically, he found plaintiff can: (1) lift and carry 50 pounds occasionally and 25 pounds frequently; (2) stand or walk for six hours in an eight hour work day, with a need for an assistive ambulatory device for step-off, prolonged ambulation, or uneven terrain; (3) occasionally perform activities requiring agility; (4) occasionally do postural activities such as pending, crouching, kneeling, crawling and stooping. (TR 331.)
According to the Social Security Administration's physical exertional requirements, "light" work requires the ability to do all of the following: lift no more than 20 pounds at a time, frequently lift or carry objects weighing up to 10 pounds; to walk or stand a good deal; to sit most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 416.967 (2008).  These requirements relate only to physical exertion and therefore do not encompass non-exertional, i.e., postural or agility, limitations.

1 range of light work activities[4] and that the treatment records do not

2 indicate plaintiff suffers from physical impairments that equal listed

3 impairments in severity or duration.  (See TR 27, 454-68.)

4 　　　Accordingly, the ALJ's evaluation of Dr. England's letter is

5 supported by substantial evidence and free from material legal error.

6 　　**ii.  Opinion of consultative examiner Dr. To** (Issue #2)

7 　　　Plaintiff also contends the ALJ improperly failed to consider Dr.

8 To's opinion because the residual functional capacity[5] ("RFC") assessment

9 did not include a walking limitation, whereas Dr. To found that

10 plaintiffs' physical limitations include: "'activities requiring agility

11 (such as walking on uneven terrain, climbing ladders, or working at

12 heights)'" and because "multiple treatment reports from plaintiff's

13 treating physician show that plaintiff uses a walker."

14 　　　Plaintiff is correct that, as with the opinion of a treating

15 physician, the ALJ must provide "clear and convincing" reasons for

16 rejecting the uncontradicted opinion of an examining physician.  Lester

17 v. Chater, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506

18 (9th Cir. 1990).  Furthermore, as with the opinion of a treating doctor,

19 even the contradicted opinion of an examining doctor can be rejected

20 only for specific and legitimate reasons supported by substantial

21

22 _____

23 　　[4] Specifically, Dr. Alpern concluded plaintiff could: lift,
carry fifty pounds occasionally and twenty-five pounds

24 frequently; sit, stand, walk for six hours of an eight-hour work
day; with the ability to occasionally climb, balance, stoop,

25 kneel, crouch, crawl.  (TR 458.)

26 　　[5] The RFC is the most an individual can still do after
considering the effects of physical and/or mental limitations

27 that affect the ability to perform work-related tasks. 20 C.F.R.
§ 416.945.

28

1  evidence in the record.  Id. (citation omitted).

2      The RFC includes the following limitations:

3  •    lift/carry 50 pounds occasionally, 25 pounds frequently;

4  •    stand/walk for 6 hours of an 8-hour workday;

5  •    sit for 6 hours of an 8-hour workday;

6  •    occasionally balance and climb; and

7  •    occasionally engage in activities such as bending, crouching,

8       kneeling, crawling, stooping.

9  (TR 24.)   The court finds that this essentially adopts Dr. To's

10 findings.  (See fn 3; TR 26, 331.)

11     With respect to walking, Dr. To found that plaintiff can stand or

12 walk for six hours in an eight-hour work day.  (TR 331.)  Consistent

13 with this, the RFC assessment is that plaintiff can stand and walk for

14 six hours of an eight-hour work day.  (TR 24.)

15     Dr. To further concludes that plaintiff can only "occasionally" do

16 activities where agility is required and "may" need a walker for "step-

17 off, prolonged ambulation, or walking on uneven terrain."  (TR 331.)  He

18 also concluded plaintiff "did not really depend on the walker when she

19 ambulates because she was almost lifting it up as she was walking." (TR

20 329.)   In keeping with this conclusion, the RFC restricts plaintiff to

21 only occasional balancing and climbing.   (TR 24.)

22     This RFC also precisely mirrors the RFC findings of both Dr. Alpern

23 and a state agency reviewing examiner, based on their reviews of

24 plaintiff's medical records, and finds abundant support in the medical

25 record.  (See TR 27, 389-92, 458-59, 468-69.)

26     In any event, there is no indication that plaintiff's past

27 relevant work as a hotel clerk, as she described the job (TR 91) and as

28                                    9

1  it is described in the Dictionary of Occupational Titles ("DOT"),
2  requires walking on uneven terrain, climbing ladders, working at
3  heights, or any other act requiring agility or balance.

4  Accordingly, the ALJ's consideration of Dr. To's findings is
5  supported by substantial evidence and free from material legal error.

6  B.   Residual Functional Capacity (Issue #3)

7  Plaintiff contends the ALJ failed to properly assess her residual
8  functional capacity ("RFC") because his assessment did not include
9  "plaintiff's walking and other physical limitations." Plaintiff does
10  not specify what "other physical limitations" she believes were
11  improperly omitted from the RFC, and states again only that the ALJ
12  improperly rejected Dr. To's findings "without legally sufficient
13  reasons."

14  For the reasons set out in the prior section, the ALJ's evaluation
15  of Dr. To's conclusions are supported by substantial evidence in the
16  record and free from material legal error.

17  C.   Past Relevant Work (Issue #4)

18  Plaintiff contends that the ALJ's conclusion at step four of the
19  sequential evaluation was inadequate because the ALJ "did not discuss,
20  or even mention, the actual mental or physical demands of the
21  plaintiff's past relevant work."

22  Plaintiff is correct that, to determine whether the plaintiff has
23  the RFC to perform plaintiff's past work, the Commissioner must
24  ascertain the demands of plaintiff's former work, and then compare the
25  demands with plaintiff's capacity. Villa v. Heckler, 797 F.2d 794, 797-
26  98 (9th Cir. 1986).

27  The ALJ found, in keeping with the report of the vocational

28                                    10

1  consultant who reviewed plaintiff's description of her past relevant

2  work, that plaintiff could perform her past relevant work of hotel clerk

3  both as she described the job and as it is described in the DOT. (TR 27,

4  158.)

5       Plaintiff described her hotel clerk job as requiring her to receive

6  phone calls to make room reservations.  Specifically, she said the job

7  called on her to:

8  •    lift/carry up to twenty-five pounds occasionally, up to ten pounds

9       frequently (meaning from 1/3 to 2/3 of the work day);

10 •    walk, stand, sit, reach frequently;

11 •    climb, stoop, kneel, crouch occasionally.  (TR 91.)

12      Similarly, the DOT describes the job of hotel clerk as requiring a

13 light level of strength, i.e., to lift no more than 20 pounds at a time,

14 frequently lift or carry objects weighing up to 10 pounds; walk or stand

15 a good deal; sit most of the time with some pushing and pulling of arm

16 or leg controls.  20 C.F.R. § 416.967.

17      Accordingly, this finding is supported by substantial evidence and

18 free from material legal error.

19           D.   Lay Witness(Issue #5)

20      Plaintiff contends that the ALJ erred by failing to consider the

21 written statements of her boyfriend.

22      "[D]escriptions by friends and family members in a position to

23 observe [plaintiff's] symptoms and daily activities have routinely been

24 treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232

25 (9th Cir. 1987).   Accordingly, competent lay testimony "as to a

26 [plaintiff's] symptoms or how an impairment affects ability to work . .

27 . cannot be disregarded without comment." Stout v. Comm'r of Soc. Sec.

28

1  Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)(citations omitted).  Rather,

2  "[i]f the ALJ wishes to discount the testimony of the lay witness, he

3  must give reasons that are germane to each witness for doing so."  Id.

4  (citations omitted).

5       The ALJ was presented with two written, third-party function

6  reports by plaintiff's boyfriend, Richard McMillan, who did not testify

7  at the hearing.  (TR 25.)  These reports (see TR 109-17, 148-53) mirror

8  almost verbatim plaintiff's own function reports (see TR 99-106,140-47).

9  Specifically, they state that plaintiff is able to walk only thirty feet

10  and then must rest for twenty to thirty minutes, that she is unable to

11  lift more than fifteen pounds, that she has limitations on her ability

12  squat, lift, bend, stand, reach, walk, sit, kneel, stair-climb, and to

13  complete tasks.  (TR 25, 109-17, 148-53.)

14       The ALJ found that these statements were not credible to the extent

15  that they were directly contradicted by the medical evidence of record,

16  including the opinions of the examining and reviewing medical experts

17  discussed above.  (See TR 25-27.)  Inconsistency with medical evidence

18  is a "germane reason" for discrediting the testimony of a lay witness.

19  Bayliss v. Barnhart, 427 F. 3d 1211, 1218 (9th Cir. 2005).

20       Accordingly, this credibility determination is supported by

21  substantial evidence and free from material legal error.

22            E.    Medication Side Effects (Issue #6)

23       Plaintiff contends the ALJ failed to properly consider her

24  subjective statements that her medications make her feel sleepy, dizzy,

25  and cause her to have difficulty concentrating during the day.

26       Absent affirmative evidence of malingering, if a plaintiff has

27  produced evidence of an impairment that reasonably could give rise to

28

the symptoms alleged, the Commissioner may reject plaintiff's subjective testimony regarding the extent of those symptoms only for clear and convincing reasons.   Lester v. Chater, 81 F.3d at 834.   If the ALJ rejects the plaintiff's allegations as not credible, he or she "must specifically make findings which support this conclusion."   Bunnell v. Sullivan, 947 F.2d at 345.

An ALJ may, however, use ordinary techniques of credibility evaluation in weighing a plaintiff's subjective complaints and thus may consider such evidence as prior inconsistent statements, testimony that appears less than candid, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and plaintiff's daily activities. Smolen v. Chater, 80 F.3d 1272, 1281 (9th Cir. 1996).   If the ALJ finds specific reasons suggesting plaintiff's testimony is generally not credible, plaintiff's symptom testimony may likewise be rejected. Thomas v. Barnhart, 278 F.3d 957,960 (9th Cir. 2002)(citation omitted).   When the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second guessing." Id. at 958.

The ALJ here found that plaintiff was not credible and her statements were contradicted by the medical record.   (TR 25.)   In listing the number of ways he found plaintiff's statements about her limitations were contradicted by the record (see TR 25-27), the ALJ pointed out, for example, that examining physician Dr. To concluded plaintiff magnifies her complaints and noted that, while plaintiff stated she cannot walk without a walker, she did not depend on it and almost lifted it up as she walked. (TR 26, 330).   Furthermore, although the medical records of evidence reveal a history of low-back complaints,

13

1  they do not indicate that plaintiff has reported side effects from

2  medications, sought to alter her treatment course due to side effects,

3  or reported any problem with concentration.[6] (TR 26, 104, 140-47, 327-

4  31.)

5       These are clear and convincing reason to reject her testimony. See

6  Thomas v. Barnhart, 278 F.2d 947, 960 (ALJ rejected subjective side

7  effect complaints because plaintiff's demeanor at hearing suggested that

8  she "seemed to engage in considerable histrionic exaggeration."). In

9  any event, side effects not "severe enough to interfere with

10 [plaintiff's] ability to work" are properly excluded from consideration.

11 Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001). References to

12 side effects made only to the social security administration are not

13 alone evidence that the side effects of the medications are severe

14 enough to affect her ability to work. See Miller v. Heckler, 770 F.2d

15 845, 849 (9th Cir. 1985)( ALJ properly rejected allegation so impairment

16 from side effects of narcotic medication because plaintiff provided no

17 clinical evidence showing that narcotic use impaired her ability to

18 work).

19      Accordingly, the ALJ's credibility determination is supported by

20 substantial evidence in the record and is free from material legal

21 error.

22                              CONCLUSION

23      If the evidence can reasonably support either affirming or

24 reversing the Commissioner's conclusion, the court may not substitute

25 _____

26      [6] In the third-party function reports, plaintiff's boyfriend
   likewise states that plaintiff has no problems with
27 concentration.  (TR 114, 153.)

28
                              14

its judgment for that of the Commissioner.   <u>Flaten v. Sec'y of Health</u>
<u>and Human Servs.</u>, 44 F.3d at 1457.

After careful consideration of the record as a whole, the magistrate judge concludes the Commissioner's decision is supported by substantial evidence and free from material legal error.   Accordingly, it is ordered that judgment be entered in favor of the Commissioner.

DATED: 2/26/2009

CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

.. 21

## SOCIAL SECURITY ADMINISTRATION
### Office of Disability Adjudication and Review

## DECISION

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| Sabrina Ann Moore | Supplemental Security Income |
| (Claimant) | |
| | ▉▉▉▉▉▉▉ |
| (Wage Earner) | (Social Security Number) |

### JURISDICTION AND PROCEDURAL HISTORY

On September 6, 2005, the claimant filed an application for supplemental security income, alleging disability beginning November 1, 2001. The claim was denied initially on January 13, 2006, and upon reconsideration on May 30, 2006. Thereafter, the claimant filed a timely written request for hearing on July 26, 2006 (20 CFR 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on August 31, 2007, in Santa Barbara, CA. The claimant is represented by Chadwick Simpson, a non-attorney representative.

### ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912(d).

After careful consideration of all the evidence, the undersigned Administrative Law Judge concludes the claimant has not been under a disability within the meaning of the Social Security Act since September 6, 2005, the date the application was filed.

### APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

See Next Page

**EXHIBIT**

Sabrina Ann Moore (⬛⬛⬛⬛⬛⬛⬛⬛⬛)

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

See Next Page

EXHIBIT

At the last step of the sequential evaluation process (20 CFR 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

1.   **The claimant has not engaged in substantial gainful activity since September 6, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).**

Although the claimant worked after the alleged onset date of disability, the earnings from this work did not constitute substantial gainful activity.

2.   **The claimant has the following severe impairments: obesity; low back pain; and, history of borderline high blood pressure and asthma (controlled) (20 CFR 416.920(c)).**

The claimant has been diagnosed with and treated for obesity; low back pain; and, history of borderline high blood pressure and asthma (controlled), and some examiners observed that the claimant had significant limitations due to these conditions. They are, therefore, severe.

Under the special technique for evaluating mental impairments, 20 CFR § 404.1520a, the undersigned finds that the claimant does not have a severe mental impairment that satisfies the diagnostic criteria of Part A. Under Part B criteria, she has no limitations of activities of daily living, no limitations of social functioning, and mild limitations of concentration, persistence or pace. The claimant has no episodes of decompensation within one year; each lasting for at least two weeks. She does not have a mental impairment that meets the Part C criteria of a listing.

The following evidence supports the findings under the special technique. The claimant did not allege mental impairment at the hearing. Consultative psychiatric evaluation was performed on November 13, 2004, by Jason Yang, M.D. The claimant reported that she has never seen a psychiatrist or therapist and has never been on any psychiatric medications. She did undergo individual psychotherapy as a teenager. She had good eye contact and was oriented in all four spheres. She stated that her typical activities included caring for her 10 year old daughter; performing some household chores, errands, shopping, cooking; and, performing hobbies on plastic and canvas crafts. She visits with family and friends and gets along adequately with others. Her thought content was intact. The claimant was diagnosed with adjustment disorder, anxious. Dr. Yang found the claimant to be only slightly impaired (Exhibit 3F). State agency

See Next Page

EXHIBIT

Sabrina Ann Moore (⬛⬛⬛⬛⬛)

reviewing physicians reported that the medical evidence of record revealed non severe mental impairment (Exhibits 5F; 13F). Regarding mental impairments, the medical records show minimal, if any, medical history, including present and past complaints and treatment; objective signs or symptoms observed; administration of a diagnostic examination or description of results; diagnosis of nature and extent of disease; regular treatment; consultation with an appropriate specialist; evaluation of compliance, results or treatment and determination of additional treatment needs. The undersigned finds that the claimant has the following medically determinable, but not severe, impairment: adjustment disorder, anxious.

**3.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

After reviewing all the documentary evidence and testimony of record, the Administrative Law Judge concludes the claimant's impairments do not meet or equal any of the criteria set forth in any of the listed impairments set forth in Appendix 1, Subpart P, Regulations No. 4. In reaching this conclusion, the Administrative Law Judge has considered the opinions of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion (20 CFR 416.927(f); Social Security Ruling 96-5p).

**4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk 6 hours/8 hour workday; sit 6 hours/8 hour workday; and, occasionally climb, balance, stoop, kneel, crouch or crawl.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

See Next Page

EXHIBIT

Sabrina Ann Moore (⬛⬛⬛⬛⬛⬛)                                    Page 5 of 8      25

Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 416.929(c) describes the kinds of evidence, including the factors below, that the undersigned must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p).

At the hearing, the claimant testified that she suffers from lower back pain on a constant basis and shooting pain down the left leg on an intermittent basis. She has difficulty walking because her legs give out. Dr. England prescribed a walker about two years ago. She is able to walk 5 minutes and then must rest for 10 minutes to alleviate the pain. She also experienced numbness in the lower extremities causing her to fall. The claimant stated that she is able to sit for 5-10 minutes and stand about 10 minutes. Her prescribed treatment has included physical therapy and TNS unit (which she has not started yet because of waiting for medical approval). The claimant has refused shots to her lower back due to fear. She goes to a chiropractor every few weeks; however, her back goes out again in just a few hours. The claimant noted that she takes numerous medications for her conditions including three medications for her pain. These medications cause her to feel sleepy, drowsy and dizzy. She has trouble doing paper work and following a plot on television. She has some periodic carpal tunnel issues that cause her to be limited in ability to lift. She has trouble sleeping because of her pain and lies down about 5 hours a day to rest.

Richard McMilan, the claimant's boyfriend, has reported that the claimant is able to walk 30 feet and then must rest 20-30 minutes. He noted that she is unable to lift over 15 pounds. The claimant has limitations on her ability to lift, squat, bend, stand, reach, walk, sit, kneel, stair-climb or complete tasks. She takes care of her daughter and helps with the housework 2-3 hours a week. Mr. McMilan stated that he does most of the cooking (Exhibits 5E; 11E). I give greater weight to the documented medical evidence of record.

See Next Page

EXHIBIT

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible but not to the extent alleged because according to the responses by the physical medical expert (Exhbit19F), her reported symptoms are not well-supported by medically acceptable clinical, laboratory and diagnostic techniques; and, are not consistent with the other substantial medical evidence in the record. Regarding physical impairments, the claimant's medical records show that treating physician(s) responded with limited and conservative treatment. Such treatment is inconsistent with the medical response that would be expected if the physician(s) found the symptoms and limitations to be as severe as reported by the claimant.

The objective medical evidence fails to fully support the claimant. Medical records of evidence reveal a history of low back pain complaints (Exhibits 1F; 2F; 4F). In June of 2004 lumbar spine MRI was unremarkable (Exhibit 2F/7). In November 1996 Nerve Conduction Velocities demonstrated evidence of mild carpal tunnel compression (Exhibit 6F). William Ross, D.C., reported in December 2002 that the treatments that the claimant receives helped but did not provide complete relief. He noted that her symptoms were consistent with chronic low back sprain/strain (Exhibit 7F). In May 2003 physical therapy was prescribed for lumbar strain (Exhibit 8F/4). The claimant was treated in the Emergency Room on May 19, 2005, for back pain with left sciatica. She was discharged home to follow up with Dr. England in 1-2 days (Exhibit 10F/5).

Consultative internal medicine examination was performed on December 17, 2005, by Sean To, M.D. The claimant complained of low back pain with numbness and tingling sensation radiating down to the legs bilaterally. She stated that her pain was increased with prolonged sitting and standing for about 10 minutes. She then has to switch positions. She had been using a walker for about 1 year to assist in ambulation and balance. She stated that she was unable to walk without the walker. She was diagnosed with asthma 3 years prior to the evaluation she was taking medications. Her blood pressure was 132/78. She was 64 inches tall and weighed 234 pounds. Dr. To noted that the claimant did not really depend on the walker when she ambulated because she was almost lifting it up as she was walking. Palpation along the paravertebral muscles and midline along the spinous process did not elicit pain or evidence of muscle spasm, except for moderate tenderness on the lumbosacral area. There was decreased range of motion of the lumbar spine due to pain. Straight leg raising was negative sitting and supine, bilaterally. Deep tendon reflexes were symmetric and 2+. Dr. To noted that MRI 6 months before the exam was unremarkable. He stated that the claimant's subjective complaints were out of proportion to the objective findings, suggesting symptom magnification. The claimant's hypertension was under control. Her asthma was under control. Her obesity was thought to contribute to her back pain. Dr. To concluded that the claimant had the residual functional capacity to perform less than a full range of medium work activities (Exhibit 12F).

In June 2005 Dr. Linda England, M.D., stated that the claimant had been totally disabled and unable to work since February of 2004 (Exhibit 14F/16). In January 2006 State agency reviewing physician concluded that the claimant had the ability to perform a range of medium work activities (Exhibit 16F).

See Next Page

EXHIBIT

Sabrina Ann Moore (████████)

Harvey Alpern, M.D., medical expert, reported on September 28, 2007, that he had read the medical data pertaining to the claimant and found sufficient evidence of objective medical evidence to demonstrate that the claimant had one or more medically determinable physical impairments. He stated that the claimant's impairments did not meet or equal in severity and duration the requirements of any of the listed impairments. Dr. Alpern stated that the medical evidence of record was well-supported and consistent with the other substantial medical evidence in the record. He noted that the claimant had not been put on a program of weight loss and back exercise. Additionally, he indicated that there was evidence in Exhibit 12F suggesting exaggeration of symptoms by the claimant. Dr. Alpern opined that the claimant had the residual functional capacity to lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk 6 hours/8 hour workday; sit 6 hours/8 hour workday; and, occasionally climb, balance, stoop, kneel, crouch or crawl. He felt that the claimant's impairments would not disrupt a regular work schedule that otherwise accommodated all her limitations (Exhibit 19F).

As for the opinion evidence, the medical expert's statement regarding symptoms and resulting limitations is fully credible, based on supportability with medical signs and laboratory findings; consistency with the record; and, area of specialization (Exhibit 19F). Dr. England's statement regarding symptoms and resulting limitations is generally credible, but not to the extent alleged because the claimant's relevant medical records show that the treating physician(s) responded with limited and conservative treatment. Such treatment is inconsistent with the medical response that would be expected if the limitations were as severe as described by the physician (Exhibit 14F/16). Furthermore, the medical expert reported that Dr. England's assessment was not supported by the clinical, laboratory or other medical techniques in the record (Exhibit 20F). Additionally, her assessment is an ultimate conclusion of permanent disability and inability to work is reserved for the commissioner to determine. Dr. Yang's statement regarding mental symptoms and resulting limitations is fully credible, based on length, nature and/or extent of examining physician's relationship to the claimant; supportability with medical signs and laboratory findings; consistency with the record; and, area of specialization (Exhibit 3F).

**5.   The claimant is capable of performing past relevant work as hotel clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).**

Based on the claimant's description of her work history (Exhibit 2E) and the assessment by the State agency vocational consultant (Exhibit 13E) the job of hotel clerk meets the qualifications for past relevant work.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed. The claimant's description of her past relevant work indicates that it was performed at the level which is within her capacity (Exhibit 2E). Additionally, the State agency vocational consultant noted the claimant, with the above residual functional capacity, is able to perform her past relevant work as described by the claimant and as described in the Dictionary of Occupational Titles (Exhibit 13E).

See Next Page

EXHIBIT

6.  The claimant has not been under a disability, as defined in the Social Security Act, since September 6, 2005 (20 CFR 416.920(f)), the date the application was filed.

## DECISION

Based on the application for supplemental security income filed on September 6, 2005, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

John L Gerb
Administrative Law Judge

Date    JAN 1 8 2008

EXHIBIT